IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

MORNING STAR BAPTIST CHURCH,  :
NED N. CARY, JR.,             :
                             :
            Plaintiffs,       :
                             :
v.                            :        Civil Action No. 4:05cv47
                             :
JAMES CITY COUNTY POLICE,     :
STERLING PERRY,               :
COMMONWEALTH OF VIRGINIA,      :
MICHAEL McGINTY,              :
ANHEUSER BUSCH INC., and      :
SHAWN MILLER,                 :
                             :
            Defendants.       :
_____:


## OPINION AND ORDER


     Since 1987, plaintiff Ned N. Cary, Jr. ("Cary") has filed at
least eight separate actions in state and federal court.  Each
lawsuit, including this one, concerns his former employment at
defendant Anheuser Busch, Inc. ("Anheuser Busch").  Cary
summarily lost all of those cases, and, in his most recent state
court case, the Circuit Court of the City of Williamsburg and
James City County sanctioned him with attorneys' fees and a pre-
filing injunction.  Because Cary seeks to relitigate in this
action claims that have been decided multiple times, the Court

**GRANTS** defendants' Motions to Dismiss (Docket Nos. 32, 34, & 37)[1] and imposes the same sanctions as the court in Williamsburg.

## I.  Facts and Procedural History

_____Plaintiff Cary was employed at a brewery in Williamsburg that is owned and operated by Anheuser Busch.  Cary is also an ordained minister at plaintiff Morning Star Baptist Church.[2] Cary's employment with Anheuser Busch ended on or about May 4, 1992.

Cary's problems with Anheuser Busch began at some point in 1987 after he had a conversation with God.  As Cary recounted the conversation to a coworker, God said that He would allow Cary to take two people with him "to the other side," and that the coworker was one of the chosen two.  Anheuser Busch ordered Cary to undergo psychological counseling after the coworker complained.

---

[1]As a result of this ruling, the summary judgment motion (Docket No. 39) is **DENIED AS MOOT.**

[2]Though Morning Star Baptist Church is a named plaintiff in this action, it has never appeared through counsel, despite an Order of this Court directing it to do so if it wished to remain a plaintiff.  (Docket No. 26, at 3).  Because this litigation arises out of Cary's employment with Anheuser Busch, the Church has no conceivable connection to this case.  As a result, the Court **FINDS** that Morning Star Baptist Church is not a proper plaintiff in this action, and any further reference to "plaintiff" in this Opinion applies only to plaintiff Cary.

Cary thereafter fired the first shot in what would become a litigation war of attrition.  He complained to the Equal Employment Opportunity Commission ("EEOC") that Anheuser Busch had coerced him into receiving medical treatment in violation of his First Amendment right to religious freedom.  After the EEOC declined to pursue the claim, Cary sued Anheuser Busch and two of its employees.  Cary v. Anheuser-Busch, Inc., 741 F. Supp. 1219 (E.D. Va. 1988).  Judge Doumar of this Court found that the employees were improper defendants and granted summary judgment to Anheuser Busch.  Id. at 1221-23.  That decision was affirmed by the United States Court of Appeals for the Fourth Circuit, 904 F.2d 699 (4th Cir. 1990), and the United States Supreme Court denied Cary's Petition for Writ of Certiorari.  498 U.S. 907 (1990).

The next battle erupted when Anheuser Busch terminated Cary's employment in May 1992.  Cary refused to sign a consent form before submitting to mandatory drug testing.  The form was required by the collective bargaining agreement between Anheuser Busch and the Teamsters Local 95 union.  Cary asserted that signing the form would somehow conflict with his First Amendment right to religious freedom.  After several rounds of negotiation, Cary was fired.  Cary's subsequent claim for unemployment compensation was denied when the Virginia Employment Commission ("VEC") ruled that Anheuser Busch fired him for misconduct.  Cary

appealed the adverse unemployment decision to the Circuit Court of the City of Williamsburg and James City County.  Both the Circuit Court and the Court of Appeals of Virginia affirmed the VEC's decision.  Cary v. Va. Employment Comm'n, No. 1192-93-1, 1993 Va. App. LEXIS 472 (Va. Ct. App. Sept. 28, 1993).  Anheuser Busch was a named defendant in this action.  Id.

Cary then executed a flanking maneuver, taking the battle to federal court.  He first filed suit against the union that had negotiated the collective bargaining agreement.  Cary v. Teamsters Local Union No. 95, Civ. Action No. 4:93cv8 (E.D. Va. 1993) (Doumar, J.).  Cary lost that case on summary judgment, and Judge Doumar's decision was affirmed on appeal.  Cary v. Teamsters Local Union No. 95, 23 F.3d 400, 1994 U.S. App. LEXIS 18456 (4th Cir. 1994).

Unsatisfied with that result, Cary instituted another action in this Court under the style of Cary v. Carmichael, 908 F. Supp. 1334 (E.D. Va. 1995).  This action alleged that Anheuser Busch, two Anheuser Busch employees, and the business agent for the union violated Title VII by failing to accommodate those religious beliefs that prevented Cary from signing the drug testing consent forms.  Judge Doumar (who by this time had become Cary's personal judge[3]) held that the claim against the union

_____

[3]Cary objected, in writing, to the assignment of the present case to this Court as opposed to Judge Doumar.  (Docket No. 17).

agent was barred by <u>res judicata</u> as a result of Cary's 1993 suit in this Court.  Judge Doumar further held that the two Anheuser Busch employees were improper defendants in a Title VII claim. Finally, the Court granted summary judgment to Anheuser Busch on Cary's Title VII claim.  <u>Id.</u> at 1339, 1353.

Stymied in federal court, Cary retreated back to the state courts.  This time he sued Anheuser Busch and Cigna Insurance Company, contending "that the Workers' Compensation Commission erred in finding that he failed to prove he sustained an occupational disease arising out of and in the course of his employment with Anheuser Busch."  <u>Cary v. Anheuser Busch</u>, No. 0781-97-1, 1997 Va. App. LEXIS 462, at *1 (Va. Ct. App. July 8, 1997).  Cary argued that Anheuser Busch viewed his religion as a disease that required treatment because Anheuser Busch had recommended psychological counseling after Cary's refusal to sign the consent form for religious reasons.  Thus, Cary "sought compensation for the occupational disease of Christianity."  <u>Id.</u> at *2.  Not surprisingly, the Workers' Compensation Commission denied Cary's claim and that decision was affirmed on appeal. <u>Id.</u> at *3.

Instead of conceding defeat, Cary charged the hill yet again.  He sued Anheuser Busch and the Workers' Compensation Commission over the circumstances of his dismissal.  He requested that the Workers' Compensation Commission order reinstatement of

5

his employment due to his allegedly unlawful termination.  Cary
v. Anheuser Busch, Inc., No. 2179-99-1, 1999 Va. App. LEXIS 619
(Va. Ct. App. Nov. 9, 1999).  The Workers' Compensation
Commission rejected Cary's claim on the grounds of lack of
subject matter jurisdiction (the Commission is without authority
to adjudicate Title VII claims or order reinstatement of
employment) and res judicata.  Id. at *2.  Again, this decision
was affirmed on appeal.  Id.

Thus, as of November 1999, Cary had filed no less than six
actions in state and federal court concerning the intersection of
his religious beliefs and his employment.  Cary lost all of those
cases.  Anheuser Busch was a named defendant in at least five of
the six cases.  Eight other individuals also had to defend
against Cary's litigation carpet-bombing.

Like General Washington wintering in Valley Forge in 1777,
Cary seems to have taken a litigation respite between 1999 and
December 2002.[4]  This uneasy truce was broken when Cary filed
suit in the General District Court for the City of Williamsburg
and County of James City in a case styled Ned N. Cary, Jr. v.
Shawn Miller and R. Temple Mayo, CL-03040160-00.  Cary alleged

---

[4]During the long winter in Valley Forge, Baron von Steuben
re-trained the Continental Army, thereby enabling General
Washington's success in future campaigns.  Thomas Fleming,
Liberty!  The American Revolution 279-85 (1997).  Unfortunately,
plaintiff Cary did not similarly employ the services of a wise
professional.

that the two defendants in this General District Court case, both Anheuser Busch employees, violated Cary's First Amendment rights by ordering psychological testing in 1987.  This was, of course, the same claim that Cary filed and lost in 1988.  <u>Cary</u>, 741 F. Supp. 1219.  Moreover, at least one of the defendants was not even employed by Anheuser Busch during the relevant time period.  The General District Court dismissed Cary's claim with prejudice and fined him $250.00.  Cary appealed this ruling.

By Order dated June 24, 2004, Judge Powell of the Circuit Court of Williamsburg and James City County found that Cary's claims were barred by the statute of limitations and by the <u>res judicata</u> effects of the five previous cases regarding the termination of his employment.  The court also found that Cary's filing of the case violated Va. Code Ann. § 8.01-271.1, which is Virginia's equivalent of Fed. R. Civ. P. 11.  As a result, the court awarded one of the defendants, Shawn Miller, attorneys' fees in the amount of $5,000.  The court also permanently enjoined Cary from filing any further legal action against any party arising out of his employment by Anheuser Busch in the state courts of the Commonwealth of Virginia without first obtaining an Order granting permission to file the case.  (Docket No. 41, Ex. A).

Prohibited from continuing his war in the state courts, Cary took the battle to the streets.  Several times in 2004, Cary

picketed outside the gates of the Anheuser Busch brewing facility in Williamsburg.  On October 14, 2004, Cary was parked on the shoulder of the road outside the Anheuser Busch facility displaying a sign that read "**Shawn Miller of Human Resources is a Negro Nazi.**"  The James City County police arrested Cary and charged him with violating Va. Code Ann. § 18.2-417, which prohibits the writing and publishing of any false words "which from their usual construction and common acceptation are construed as insults and tend to violence and breach of the peace . . . ."  Cary was eventually acquitted of this crime.

Cary then returned to his familiar battle ground - the courts.  He filed the instant suit on April 29, 2005.  The original Complaint stated in full:

> Plaintiff, Ned N. Cary, Jr. appears before this United States District Court for the Eastern District of Virginia alleging violations of his civil rights. Plaintiff alleges False Arrest, Conspiracy, misrepresentation of facts with malice.  A Statement of facts (State Court CR04014275-00) and two (2) exhibits filed with this complaint.[5]

(Docket No. 1).  Attached to the Complaint were a Motion to Dismiss that had been filed on Cary's behalf in the criminal action and photocopies of two newspaper articles concerning the criminal action.  Viewing the Complaint and its attachments as a whole and construing it very liberally, plaintiff Cary's claims

---

[5]All aberrant formatting and errors in any quotations of Cary's submissions to this Court appear in the original.

seemed to arise from his arrest and subsequent prosecution.  This incident had not been litigated previously.

A broad view of the factual scenario at issue suggests that the proper defendants, if any, in this newest action were the James City County police officers who arrested Cary.  However Cary, as is his custom, also sued Anheuser Busch, Shawn Miller, the Commonwealth of Virginia, and Commonwealth's Attorney Michael McGinty.  The reason for this apparent over-inclusion of defendants became clear as the case unfolded.

Defendants moved to dismiss the original Complaint.  In response to these motions, plaintiff Cary submitted an affidavit (Docket No. 19) stating that "Civil Action No. 4:05cv47 involves abusive activity, unlawful and uncivilized conduct regarding civil rights protected by federal statutes."  The affidavit then launched into a diatribe about Cary's employment at Anheuser Busch, stating,

> the Employer, Anheuser Busch, and its Union, Teamster Local 95, historically held Christian virtues as unacceptable and unimportant, Believing CHRISTIANITY to Be based in mythology citing "Jesus Christ as Queer and Mary as a Whore" further Stating that "There is no God and even if there was, there's nothing that he could use Ni[***]rs for."

The affidavit went on to assert that as a result of this alleged religious animus, the "Employer" somehow enlisted the Police Department to harass Cary while he was picketing.

After oral argument, the Court dismissed Cary's Complaint without prejudice, but granted leave to amend. (Docket No. 26). Although Cary's responsive affidavit hinted otherwise, the Court remained under the impression that this case was about the legality of Cary's arrest, and not a continuation of his serial litigation. Cary's Amended Complaint put to rest that misapprehension.

Cary's Amended Complaint contained a photocopy of Section 703 of the Civil Rights Act of 1964, a photocopy of the First Amendment of the United States Constitution, a memorandum discussing Cary's employment and termination of employment at Anheuser Busch, and a declaration that "Plaintiff, Ned Cary, Was afforded protection under law as a religious person who was employed in an industrial environment" and that "The court abandoned its responsibility under the law to become engaged in what Appears to the plaintiff as Negro Bashing." (Docket No. 30, at 5). Notably, the Amended Complaint lacked any mention of Cary's arrest for picketing. It thus became clear that the original Complaint concerning the arrest was a mere diversionary tactic; the real battle, once again, was over Cary's employment at Anheuser Busch.

## II.  Analysis

### A.  Dismissal of Cary's Claims

There can be no doubt that Cary's Amended Complaint, and his true reason for being in Court, concerns his employment at Anheuser Busch.  During oral argument of defendants' Motion to Dismiss the Amended Complaint, Cary unequivocally stated "[s]o my thing is I would just like to see a just resolution of this.  I have been fighting it for 14 years, and I'm not going to quit.  I don't know what avenues will open up, but I'm going to fight it until justice has been done."  (Tr. 8-9, July 3, 2006).  Though it may very well be that the arrest simply reopened Cary's perceived wound, the Amended Complaint can only be read to relate to Cary's employment at Anheuser Busch.  Further, given Cary's inclusion of Section 203 of the Civil Rights Act in the Amended Complaint, the Court construes the claim as alleging a Title VII violation.  Thus, the Amended Complaint must be **DISMISSED** on the grounds of res judicata and the statute of limitations.  See Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990) (setting forth the requirements of res judicata in the Fourth Circuit); 42 U.S.C. § 2000e-5 (setting forth the statute of limitations for Title VII claims).  Moreover, because the original Complaint concerned Cary's arrest, and because the Amended Complaint did not cure the defects of the original, any claims arising from Cary's October 14, 2004 arrest are also **DISMISSED WITH PREJUDICE.**

11

**B.   Sanctions**

As they did in state court, Anheuser Busch and Shawn Miller
have moved for an award of sanctions under Fed. R. Civ. P. 11
(Docket Nos. 41 & 42).  Specifically, these defendants ask the
Court to enjoin Cary from filing any further action against Shawn
Miller, Anheuser Busch, or any of its past, current, or future
officers, directors, employees, and attorneys without further
order of this Court.  They also request the attorneys' fees and
expenses that they incurred in defending this case.  For the
reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN
PART** the request for attorneys' fees.  The Court also **GRANTS** the
request for a pre-filing injunction.

A party presenting a motion or pleading to the Court
certifies that "to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable under
the circumstances," that

> (1) it is not being presented for any improper
> purpose, such as to harass or to cause unnecessary
> delay or needless increase in the cost of
> litigation;
>
> (2) the claims, defenses, and other legal
> contentions therein are warranted by existing law
> or by a nonfrivolous argument for the extension,
> modification, or reversal of existing law or the
> establishment of new law . . .

Fed. R. Civ. P. 11(b).  If a party violates the requirements of

Rule 11, the Court may impose sanctions after notice and an opportunity to respond.  Fed. R. Civ. P. 11(c).

It is also within a court's inherent authority and discretion to sanction a litigant for "bad faith" conduct.  <u>See Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 35, 44-46 (1991); <u>United States v. Shaffer</u>, 11 F.3d 450, 462 (4th Cir. 1993).  If a court elects to impose sanctions under its inherent authority, it must specifically explain how the offending party engaged in bad faith conduct.  <u>See Hensley v. Alcon Labs., Inc.</u>, 277 F.3d 535, 543 (4th Cir. 2002).  A court may use its inherent authority to sanction a party for conduct which also could be sanctioned under a specific statute or rule, but ordinarily should rely on the statute or rule if it provides an adequate sanction.  <u>See Chambers</u>, 501 U.S. at 50.

By this Court's count, plaintiff Cary has brought four actions in state court and the instant case is his fourth federal court action.  All of these claims arise, in some way, out of his employment at Anheuser Busch.  The very latest a cause of action arising out of his employment could have accrued is May 1992.  Cary filed this action in April 2005.  The sheer passage of time, standing along, makes clear that Cary's most recent claim was frivolous and meant to harass and cause unnecessary litigation expense.  Accordingly, the Court **FINDS** that Cary has violated Rule 11.  Moreover, Cary's bad faith history of vexatious

litigation against Anheuser Busch goes further than this specific case.  It entails years of this Court's time and resources, and thus the Court is justified in invoking its inherent sanction authority to address fully Cary's actions.  Chambers, 501 U.S. at 48-49.  Nevertheless, because Rule 11 is sufficient to remedy the harm caused by Cary's actions, the Court will proceed solely under that rule.  Id. at 50.

With regard to the notice and opportunity to respond requirement of Rule 11, Cary has had ample notice.  He has already been sanctioned in state court for the same behavior. This Court admonished Cary about potentially running afoul of Rule 11 during oral argument of defendants' Motions to Dismiss the original Complaint.  He was served with defendants' Motion for Sanctions more than two months prior to oral argument on defendants' Motions to Dismiss the Amended Complaint.  Cary neither responded nor took steps to ameliorate the problem.

In fashioning an appropriate sanction to be imposed on a serial litigant, the Court must strike a balance between the needs of innocent defendants, the serial litigant's legitimate right to the processes of the court, and the Court's Article III duty to protect its jurisdiction from abuse.  Armstrong v. Koury Corp., Nos. 99-2511, 99-2512, 2000 U.S. App. LEXIS 6459, at *2 (4th Cir. Apr. 10, 2000).  The remedies available to strike that balance are "directives of a nonmonetary nature, an order to pay

14

a penalty into court, or . . . an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  Fed. R. Civ. P. 11(c)(2).  Given Cary's litigation history and the circumstances of this case, the Court **FINDS** that a partial award of attorneys' fees and a nonmonetary directive in the form of a pre-filing injunction are warranted.

### 1.  Attorneys' Fees

Rule 11 allows for an award of "the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  Fed. R. Civ. P. 11(c)(2).  In assessing the reasonableness of attorneys' fees, a district court must consider the time spent and rates charged as compared to similar, but nonfrivolous, cases. Convey Compliance Sys., Inc. v. 1099 Pro, Inc., 443 F.3d 327, 334 (4th Cir. 2006); Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 766-68 (4th Cir. 2003).

Anheuser Busch, via in-house attorney Diane L. Hoadley, Esquire, submitted a detailed affidavit (Docket No. 46) regarding Anheuser Busch's costs in defending itself and Shawn Miller in this case.  The affidavit lists the hourly rates charged by Anheuser Busch's outside counsel, the law firm of Jones, Blechman, Woltz & Kelly, P.C.  These rates range from $80.00 per hour to $200.00 per hour.  The Court finds that these rates are

eminently reasonable for this kind of case in this geographic area.

Ms. Hoadley's affidavit also provides a detailed accounting of the hours spent by each attorney and paralegal who worked on the case.  This accounting itemizes the time spent defending the case from its inception.  However, insofar as the original Complaint concerned Cary's 2004 arrest, that issue had never been litigated and was not frivolous.  As a result, Anheuser Busch is not entitled to its fees and costs incurred in defending that portion of the case.  Fed. R. Civ. P. 11(c)(2).  It was only with the filing of the Amended Complaint that the true frivolity of this action became apparent.

The affidavit asserts that lawyers and paralegals spent a total of 26.6 hours defending the case from the date Cary filed the Amended Complaint.  This results in fees of $5,070.00.  The Court finds that this was a reasonable amount of time to spend deciphering, responding to, and arguing for dismissal of the Amended Complaint.  Anheuser Busch also incurred $45.85 of costs and expenses.  As a result, Anheuser Busch is entitled to $5,115.85 in attorneys' fees and costs, and plaintiff Cary is **ORDERED** to pay that amount to Anheuser Busch immediately.

### 2.  Pre-filing Injunction

Although a pre-filing injunction is an extraordinary remedy, it is not uncommon and is appropriately applied in circumstances

16

such as these.  E.g., Armstrong, 2000 U.S. App. LEXIS 6459; Mazur
v. Woodson, 191 F. Supp. 2d 676 (E.D. Va. 2002).  When
considering a pre-filing injunction, district courts in the
Fourth Circuit must consider four factors: (1) the party's
history of litigation, in particular whether he or she has filed
vexatious, harassing, or duplicative lawsuits; (2) whether the
party has a good faith basis for pursuing the litigation, or
simply intends to harass; (3) the extent of the burden on the
court and other parties resulting from the party's filings; and
(4) the adequacy of alternative sanctions.  Cromer v. Kraft Foods
N. Am., Inc., 390 F.3d 812, 818 (4th Cir. 2004).  This fourth
factor takes on heightened importance when the party being
sanctioned is a pro se litigant.  Id.

        With regard to the first factor, Cary's litigation history,
there can be no doubt that he has filed vexatious and duplicative
lawsuits.  To be exact, of the eight known actions that he has
filed, six of them, including this one, are duplicative.  Though
ultimately meritless, the first action Cary filed concerning
Anheuser Busch's reaction to his conversation with God and the
first action he filed concerning his termination of employment
were viable actions.  Any other claims that arose from those
transactions or occurrences should have been filed along with the
initial lawsuits.  The remaining six actions, all of which
related to one or both occurrences, are thus duplicative by

17

definition.  Cary's successive actions attained vexatious and harassing status no later than case number four or five.  In any event, Cary's situation easily satisfies the first <u>Cromer</u> factor.

Similarly, the facts surrounding Cary's situation negate any possibility of a good faith basis for bringing vexatious claims, so the second <u>Cromer</u> factor is met.  As far as the Court can tell, Cary's only basis for bringing this action, or any of the five other duplicative actions, is that Judge Doumar got it wrong in 1988 and the Circuit Court of Williamsburg and James City County got it wrong in 1993.  Though he is certainly entitled to his beliefs, he may not use the courts as his podium to express them.  Moreover, that he has already been sanctioned with fines and a pre-filing injunction in state court for similar conduct destroys any claim of good faith or honestly held belief in bringing this action.

With regard to the third <u>Cromer</u> factor, the extent of the burden on the court and other parties, Cary has been an enormous drain on both the Court and on the defendants.  There have been two sets of needless motions hearings in this case alone.  Moreover, Cary has filed the same or similar case in this Court three other times.  The more glaring burden has been on the various defendants that have fallen prey to Cary's litigation tactics, especially Anheuser Busch.  In this case alone, Anheuser Busch has spent a total of $14,788.74 defending itself and its

18

employee.  (Aff. of Diane L. Hoadley, Esq., Docket No. 46, at 3).
This sum accounts for only two of the five defendants named in
this action.  The sum also accounts only for Anheuser Busch's
litigation expenses for this action.  There have been seven other
actions in state and federal court, at least five of which were
duplicative and frivolous.  Though there is no set point at which
the burden on others becomes sufficiently high to warrant a pre-
filing injunction, Cary's situation certainly exceeds that point
by a large margin.

Finally, with regard to the fourth Cromer factor, adequacy
of alternative remedies, this Court is particularly sensitive to
Cary's status as a pro se litigant.  If a remedy less drastic
than a pre-filing injunction would be reasonably certain to deter
future abuse of the courts, the Court is obligated to choose that
option.  Cromer, 390 F.3d at 818; Safir v. United States Lines,
Inc., 792 F.2d 19, 24 (2d Cir. 1986).  Although this Court's fees
and costs award is necessary to recompense Anheuser Busch for
having to defend against this frivolous suit, Cary's litigation
history conclusively shows that a monetary sanction alone would
not deter him from future abuse of the judicial process.  Cary
has already been sanctioned in state court with a pre-filing
injunction and an attorneys' fee award of $5,000 to Shawn Miller.
He has not paid that state court sanction and continues to file
frivolous lawsuits.  Another monetary sanction will not

adequately deter future frivolous filings.  Only a pre-filing injunction will prevent Cary's serial abuse of the judicial system.

A pre-filing injunction must be narrowly tailored to fit the specific circumstances at issue.  <u>Cromer</u>, 390 F.3d at 818-19. Having considered the specific circumstances of Cary's situation and history of litigation, the Court **ORDERS** that plaintiff Cary shall be subject to a pre-filing injunction in the Eastern District of Virginia.  The conditions of this injunction are as follows: (1) Ned N. Cary, Jr. may file no further action in the United States District Court for the Eastern District of Virginia regarding or arising out of his employment or termination of employment with Anheuser Busch, and may file no further action in the Eastern District of Virginia regarding or arising out of his arrest on October 19, 2004 in Williamsburg, Virginia; (2) Ned N. Cary, Jr. may file no further action in the United States District Court for the Eastern District of Virginia against Shawn Miller, Anheuser Busch, or any past, present, or future officer, director, employee, or agent of Anheuser Busch without first submitting to the Clerk of Court an "Application for Leave to File Suit in Federal Court," which application must be accompanied by a copy of this Opinion and Order, a notarized affidavit or declaration certifying that the matters raised in the suit have never before been raised or disposed of on the

20

merits in state or federal court, and proof of payment of this Court's $5,115.85 monetary sanction.[6]  Plaintiff Cary is **WARNED** that a violation of this Court's pre-filing injunction may constitute contempt of court and subject Cary to civil and criminal penalties.

## III.  Conclusion

For the reasons stated above, the various Motions to Dismiss (Docket Nos. 32, 34, & 37) are **GRANTED** and the Motion for Summary Judgment (Docket No. 39) is **DENIED AS MOOT**.  This action is **DISMISSED WITH PREJUDICE.**  Defendants Anheuser Busch's and Shawn Miller's Motion for Sanctions (Docket No. 41) is **GRANTED IN PART** and **DENIED IN PART.**  Plaintiff Cary is **ORDERED** to pay $5,115.85 to Anheuser Busch immediately and is further **ORDERED** to abide by the pre-filing injunction set forth above.

Plaintiff Cary may appeal this Opinion and Order by sending a written notice of appeal to the Clerk of the United States District Court, Walter E. Hoffman United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  This notice must be received within thirty (30) days of this Order.  Fed. R. App. P. 4(a).

---

[6]See <u>Autry v. Woods</u>, 106 F.3d 61, 63-64 (4th Cir. 1997); <u>Mazur</u>, 191 F. Supp. 2d at 684-85.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to plaintiff Cary and all counsel of record.

**IT IS SO ORDERED.**

_____/s/_____
Walter D. Kelley, Jr.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 30, 2007